# TREVINO *v.* TEXAS

No. 91–6751.   Decided April 6, 1992

PER CURIAM.

I

The State of Texas charged petitioner Joe Mario Trevino for the murder and rape of Blanche Miller, a capital offense. On February 1, 1984, before jury selection, petitioner filed a "Motion to Prohibit the State from Using Peremptory Chal-

lenges to Strike Members of a Cognizable Group." The motion recited:

> "The Accused requests of the Court that the State of Texas be prohibited from its use of peremptory challenges to strike prospective jurors merely based on the fact of race. The prosecution, the State of Texas, historically and habitually uses its peremptory challenges to strike black people and other minorities who are otherwise qualified. These peremptory challenges are exercised by the State of Texas to strike prospective black jurors in its effort to produce an ethnically pure, all white, jury. This common use of the State's peremptory challenge in a criminal trial deprives the Accused of due process and a fair trial. This practice deprives the Accused of a jury representing a fair cross-section of the community in violation of the Sixth Amendment to the United States Constitution.
>
> "A hearing is requested on this Motion." 1A Record 280.

The trial court delayed ruling on the motion until the *voir dire*. During the course of *voir dire*, the prosecution exercised its peremptory challenges to excuse the only three black members of the venire. After each of these peremptory strikes, petitioner, who is Hispanic, renewed his motion, asking that the prosecution state its reasons for striking the jurors. The first time petitioner renewed the motion, the court stated: "I know of no requirement yet for either party to announce his reasons for exercising a preemptory [sic] challenge. Can you cite me some law on that?" 11 Record 356. In response, petitioner's counsel cited *McCray v. Abrams*, 576 F. Supp. 1244 (EDNY), aff'd in part and rev'd in part, 750 F. 2d 1113 (CA2 1984). He went on to note that when we denied the petition for a writ of certiorari in *McCray v. New York*, 461 U. S. 961 (1983), five Justices expressed the view that *Swain v. Alabama*, 380 U. S. 202

(1965), ought to be reexamined. 11 Record 356. The trial court denied petitioner's motion, and denied it again after two more black venire members were excluded.

The all-white jury returned a verdict of guilty and after a sentencing hearing returned affirmative answers to the two special questions posed by the court. See *Jurek* v. *Texas*, 428 U. S. 262, 267–269 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.). As required under such circumstances, see *ibid.*, the trial court sentenced petitioner to death. Petitioner appealed to the Court of Criminal Appeals of Texas, filing his brief on December 19, 1985. This is the cause now before us. He cited 24 errors in the guilt and punishment phases of the trial court proceedings. The only one of concern now is the prosecutor's use of peremptory challenges based on race.

Petitioner contended in the Court of Criminal Appeals that the prosecution's race based use of challenges violated his "rights to due process of law and to an impartial jury fairly drawn from a representative cross section of the community." Brief for Appellant in No. 69337, p. 11. He found these rights in "the Sixth and Fourteenth Amendments to the United States Constitution," as well as provisions of the Texas Constitution. *Ibid.* He asserted he was renewing the objections pressed at trial. *Ibid.* He acknowledged that under *Swain* v. *Alabama*, the use of peremptory challenges to discriminate in a single case would not be an equal protection violation but noted that in *Batson* v. *Kentucky*, cert. granted, 471 U. S. 1052 (1985), we would reconsider the question under the Sixth Amendment. When his brief was filed, we had heard oral argument in *Batson* but had not announced our decision. Petitioner urged that even if *Batson* did not alter the requirement of alleging an overall scheme of discrimination, the Court of Criminal Appeals should prohibit peremptory challenges based on race as a matter of state law.

On April 30, 1986, not long after petitioner filed his brief in the Court of Criminal Appeals, our decision in *Batson* came down. *Batson* v. *Kentucky*, 476 U. S. 79. The case announced the now familiar rule that when a defendant makes a prima facie showing that the State has exercised its peremptory challenges to exclude members of the defendant's racial group, the State bears the burden of coming forward with a race neutral justification. Just over a month after *Batson* was decided, the State filed its brief in the Court of Criminal Appeals. The State argued *Batson* could not avail petitioner because he is not a member of the same race as the excluded jurors. According to the State, petitioner's claim could not be considered an equal protection claim but was instead a claim that he was entitled to a jury composed of a "fair cross-section" of the community. Brief for Appellee in No. 69337, pp. 15–17. In drawing this distinction, the State relied on the view that a criminal defendant does not state an equal protection claim unless he alleges that the excluded jurors are members of the same protected class as he. We rejected this view last Term in *Powers* v. *Ohio*, 499 U. S. 400 (1991).

The Court of Criminal Appeals of Texas, sitting en banc, affirmed petitioner's conviction and sentence on June 12, 1991, and denied petitioner's application for rehearing on September 18, 1991. The opinion of the Court of Criminal Appeals does not set forth the reason for the delay of over five years between the submission of briefs and the resolution of the appeal. With respect to the peremptory challenge question, the court stated that the argument was foreclosed by *Holland* v. *Illinois*, 493 U. S. 474 (1990), in which we held that the Sixth Amendment does not prohibit the prosecution from exercising its peremptory challenges to exclude potential jurors based on race. 815 S. W. 2d 592, 598. In a footnote, the Court of Criminal Appeals stated that the arguments in petitioner's brief did not amount to reliance on the Equal Protection Clause. *Id.*, at 598, n. 3. The court's

opinion cited neither *Powers* nor *Ford* v. *Georgia*, 498 U. S. 411, which we decided on February 19, 1991. We now grant certiorari.

## II

In *Ford* v. *Georgia*, we addressed what steps a defendant in a criminal case was required to take to preserve an equal protection objection to the State's race based use of peremptory challenges during the pre-*Batson* era. Here we consider whether petitioner took those steps.

In *Ford*, the petitioner filed a pretrial "Motion to Restrict Racial Use of Peremptory Challenges," 498 U. S., at 413, wording which is in all material respects parallel to the present petitioner's pretrial "Motion to Prohibit the State from Using Peremptory Challenges to Strike Members of a Cognizable Group." The ultimate issue in *Ford* concerned the validity of a state procedural rule, but before reaching it we ruled on a preliminary issue, and that ruling is dispositive here. We stated:

> "The threshold issues are whether and, if so, when petitioner presented the trial court with a cognizable *Batson* claim that the State's exercise of its peremptory challenges rested on the impermissible ground of race in violation of the Equal Protection Clause of the Fourteenth Amendment. We think petitioner must be treated as having raised such a claim, although he certainly failed to do it with the clarity that appropriate citations would have promoted. The pretrial motion made no mention of the Equal Protection Clause, and the later motion for a new trial cited the Sixth Amendment, not the Fourteenth." *Id.*, at 418.

Despite the inartfulness of the *Ford* petitioner's assertion of his rights, we held he had presented his claim to the trial court. We noted that his reference in his motion to exclusion of black jurors "'over a long period of time,'" and his argument to the same effect "could reasonably have been

intended and interpreted to raise a claim under the Equal Protection Clause on the evidentiary theory articulated in *Batson*'s antecedent, *Swain* v. *Alabama.*" *Id.*, at 419. We placed this interpretation on the reference to history because the standard of proof for an equal protection violation under *Swain* required a showing of racial exclusion in "case after case." 380 U. S., at 223.

In the matter now before us petitioner also relied on a claim of a historical pattern of discriminatory use of peremptory challenges. That alone would have been sufficient under *Ford* to place the equal protection claim before the trial court. Of course, petitioner did more. He made an express reference to *Swain* in his argument to the trial court. 11 Record 356. In fact, petitioner argued that we would modify *Swain*'s burden of proof and that the Texas courts should anticipate our decision. We decide that petitioner presented his equal protection claim to the trial court.

We determine further that petitioner preserved his equal protection claim before the Court of Criminal Appeals. His argument caption made an express reference to the Fourteenth Amendment, and the issue presented for review was the very one that he had raised before the trial court.

The State in its brief to the Court of Criminal Appeals recognized that petitioner's argument contained an equal protection claim, albeit one which the State believed to lack merit. The State did not argue that petitioner was not making an equal protection claim but that petitioner's equal protection claim had no legal support. Given our later holding in *Powers* v. *Ohio, supra,* the State's contention is incorrect.

We cannot ignore the fact that were we to hold petitioner had forfeited his equal protection claim by failing to state it with sufficient precision, we would be applying a stricter standard than applied in *Batson* itself. There petitioner had conceded in the state courts that *Swain* foreclosed a direct equal protection claim, and he based his argument on the Sixth Amendment and a provision of the Kentucky Constitu-

tion. *Batson* v. *Kentucky,* 476 U. S., at 83. Yet we treated his allegation of a violation of the Fourteenth Amendment as sufficient to present the question. *Id.,* at 84–85, n. 4. Because petitioner's case is here on direct review, he is entitled to the rule we announced in *Batson.* Compare *Griffith* v. *Kentucky,* 479 U. S. 314 (1987) (giving retroactive application to *Batson* for cases pending on direct review or not yet final when *Batson* was decided), with *Teague* v. *Lane,* 489 U. S. 288, 296 (1989) (denying similar application for cases on collateral review).

The motion of petitioner for leave to proceed *in forma pauperis* is granted. The petition for a writ of certiorari is granted, the judgment of the Court of Criminal Appeals of Texas is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*